# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

Charles S. Walker, )
    Plaintiff, )
     )
v. )      1:12cv466 (LO/JFA)
     )
D. Calhoun, et al., )
    Defendants. )

## MEMORANDUM OPINION

Charles S. Walker, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs. The matter is presently before the Court upon a Motion to Dismiss filed by defendant Naseer Mobashar, M.D., and a Motion for Judgment on the Pleadings filed by defendant Dr. Daniel Calhoun.[1]  Both defendants notified plaintiff of the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K), and plaintiff has filed a response captioned Opposition to Motion for Judgment on the Pleadings.[2] After careful review, for the reasons that follow, defendant Mobashar's  Motion to Dismiss and defendant Calhoun's Motion for Judgment on the Pleadings will be denied, and they will be allowed thirty (30) days within which to file properly-supported motions  for summary judgment.

---

[1]A third defendant, Dr. C. Green, was dismissed a party to the action by Order dated October 16, 2012. Dkt. 20.

[2]Plaintiff moved for and was granted an extension of time to respond to Dr. Mobashar's Motion to Dismiss, Dkt. 32, 34, but no separate response to that Motion appears on the docket.

## I. Background

Plaintiff is a 71-year-old inmate in the custody of the Virginia Department of Corrections. Plaintiff has been confined at Lawrenceville Correctional Center ("LCC") since July, 2011. Am. Compl. at ¶ 4. Prior to that, he was confined at Buckingham Correctional Center ("BCC") from 2009 until his transfer to LCC. Defendant Dr. Mobashar was plaintiff's physician at BCC, and defendant Dr. Calhoun is plaintiff's primary care physician at LCC.

In the initial complaint, plaintiff alleged without additional detail that he had experienced "severe problems trying to get the medical doctors" at BCC and LCC to "follow through" with knee surgery that plaintiff requires.[3] Plaintiff stated that he has been in "chronic pain" since 2009 and must now depend on a wheelchair, because until he has knee surgery "walking is out of the question." In the amended complaint, plaintiff adds that during his confinement at BCC, Dr. Mobashar sent him for outside x-rays on three (3) separate occasions, and that the x-rays showed that plaintiff "lives in chronic pain daily" and needs surgery on both knees. Nonetheless, plaintiff alleges, Dr. Mobashar failed to "sign off" on the operation. Am. Compl. at 4. When plaintiff was transferred to LCC, Dr. Calhoun apparently ordered additional x-rays which also indicated that surgery is necessary. Dr. Calhoun sent plaintiff on a "medical run" on January 12, 2012, and the doctor who examined plaintiff allegedly was of "the same opinion of other doctors" that plaintiff "needs surgery [and] he is presently confined to a wheelchair until he can

---

[3]After reviewing the initial complaint, the Court entered an Order pointing out deficiencies and granting plaintiff an opportunity to particularize and amend his allegations in an amended complaint, and plaintiff was cautioned that the amended complaint thereafter would serve as the sole operative complaint in the case. Dkt. 3. Here, however, in light of the liberality with which courts must construe pro se pleadings, the allegations in both the initial and the amended complaints are being considered in determining whether plaintiff has stated a claim for which relief can be granted.

get this surgery." Am. Compl. at 5. As relief, plaintiff seeks an award of monetary damages and injunctive relief in the form of an order directing that the surgery be performed.

Attached to the initial complaint are several exhibits which are relevant to plaintiff's current claim. The first is a radiology report from Mobile Diagnostics, P.C. in Verona, Virginia. Dated August 28, 2009 and signed by Alan F. Knull, M.D., the report indicates that plaintiff was examined after complaining of pain. No fracture or dislocation was identified in either of plaintiff's knees, and mild to moderate degenerative changes were noted within the joint space of both. "No other findings" were noted. Compl., Ex. 1.

A second radiology report from Dr. Knull is dated November 12, 2010. At that time, no fracture or dislocation was identified in either of plaintiff's knees once again, but the degenerative changes in the joint space of both knees had progressed to "severe." As before, "no other findings" were noted. Compl., Ex. 2.

A third diagnostic radiology report, this time from VCU Health Systems in Richmond, is dated February 28, 2011. It indicates that Dr. Mobashar referred plaintiff for outside consultation, and Dr. Abby Maxwell ordered eight (8) radiographic views of plaintiff's knees. The radiologist noted an impression of "[s]evere bilateral medial and patellofemoral compartment osteoarthritis if the bilateral knees" with "no acute fracture or knee joint effusion." Compl., Ex. 4. Based on the report, Dr. Maxwell recorded findings of "severe bilateral knee DJD [degenerative joint disease]" and "knee tricompartmental severe DJD." Id. She noted that plaintiff had "failed conservative management" and indicated, "will plan for TKA [total knee

arthroplasty]."[4] Id. The doctor advised that plaintiff needed dental clearance and "completed tooth extractions" as well as a "medicine consult." Id.

A Virginia Department of Corrections Consultation Request Form indicates that plaintiff was seen by "orthopedic" on June 29, 2011 for a "cardiology consult for clearance surgery knees." Compl., Ex.7. The history of plaintiff's illness included observations that he was "arthritis both knees having difficulty walking" and was "[s]een by orthopedic on 2/28/11. Considered for TKR. Needs clearance before any procedure." Id. Pertinent physical findings are listed as "limited obility [sic] - uses wheelchair most of the time. X-ray - severe bilateral DJD knees." Id. The status of the request is listed as "approved." Id.

Plaintiff has also supplied a copy of a Consultation Report dated January 26, 2012 and signed by C. Green, M.D. It indicates that plaintiff was referred by Dr. Calhoun to "ortho" and was seen on November 29, 2011, for "severe DJD knees." Compl., Ex. 3. Dr. Green's handwriting is difficult to read and not all of his observations are legible, but it can be discerned that under the section captioned "treatment and medications recommended " the doctor wrote, "Need TKR but am not able to perform at present at [illegible] Memorial."

## II. Standard of Review

A motion to dismiss tests whether a complaint states a cause of action upon which relief can be granted. Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). That is, the alleged facts are

---

[4]According to information available at http://www.mayoclinic.com/, total knee arthroplasty is commonly referred to as knee replacement surgery.

presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Id. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).

Where, as here, a complaint is filed by a prisoner acting pro se, it must be construed liberally no matter how unskillfully it is pleaded. Haines v. Kerner, 404 U.S. 519 (1972). A pro se litigant thus is not held to the strict pleading requirements demanded of attorneys. Estelle v. Gamble, 429 U.S. 97, 106–07 (1976); Figgins v. Hudspeth, 584 F.2d 1345 (4th Cir. 1978), cert. denied, 441 U.S. 913 (1979). For these reasons, a court's "power summarily to dismiss a prisoner's pro se complaint is limited." Figgins, 584 F.2d at 1347.

## III. Analysis

To state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). To establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Importantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F.

6

Supp. 409, 414 (E.D. Va. 1990).

A delay in medical treatment may constitute deliberate indifference. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009) (citing Estelle, 429 U.S. at 104-05). A constitutional violation only occurs, however, if the delay results in some "substantial harm" to the patient. Thus, in addition to alleging that the medical need was objectively serious, the plaintiff must also show that the delay in the provision of medical care resulted in an objectively "substantial harm" in order to establish an Eighth Amendment violation. See Webb v. Hamidullah, 281 Fed. App'x. 159, 166 (4th Cir. 2008) (unpublished decision); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 2489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Shabazz, 2011 WL 2489661, at *6; see also, Webb, 281 Fed. App'x at 167 (substantial harm may be evidenced by an "marked increase in hernia[] size, frequent complaints of severe pain, or signs that [] hernia was becoming non-reducible").

At this juncture, neither defendant is entitled to the relief he seeks. The exhibits plaintiff has supplied demonstrate that when he was first examined in August, 2009, the degenerative changes in his knees were classified as mild to moderate. Compl., Ex. 1. When plaintiff was seen again in November, 2010, his condition had deteriorated to the point that the degenerative changes were "severe." Compl. Ex. 2. Thus, Dr. Calhoun's assertion that plaintiff's is "a chronic, but stable ailment," Calhoun Mem. at 4, is not borne out. Plaintiff's need for knee replacement surgery was recognized at least as early as February 28, 2011, the date he was seen by Dr. Maxwell pursuant to a referral from Dr. Mobashar, because Dr. Maxwell in her Consultation Report stated, "Will plan for TKA." Compl., Ex. 4.  Id. As outlined above, the

exhibits indicate that steps were taken thereafter by both Drs. Mobashar and Calhoun to obtain

clearance for knee surgery on plaintiff. However, at least until the amended complaint in this

action was filed on May 12, 2012, surgery had not been performed. Plaintiff alleges, and the

exhibits he has supplied do not dispute, that the pain in his knees became so severe that he now

must use a wheelchair for mobility.[5] Under these circumstances, the possibility that plaintiff

suffered substantial harm as the result of the delay in his knee surgery cannot be ruled out.

Shabazz, 2011 WL 2489661, at *6; see also, Webb, 281 Fed. App'x at 167. Because it thus is not

"clear that no relief could be granted under any set of facts that could be proved consistent with

[plaintiff's] allegations," defendants' motions to dismiss the complaint for failure to state a claim

must be denied. Hishon, 467 U.S. at 73.

Dr. Mobashar also argues that he is entitled to qualified immunity, Mobashar Mem. at 11,

but the Court finds that defendant's reliance on the defense of qualified immunity is premature.

Before a court can judge whether a defendant is entitled to qualified immunity, it must first

determine whether the plaintiff has alleged the deprivation of an actual constitutional right.

Wilson v. Layne, 526 U.S. 603, 609 (1999). Deciding the constitutional question before

addressing qualified immunity promotes clarify in the legal standards for official conduct, and

thus benefits both officials and the general public. County of Sacramento v. Lewis, 523 U.S.

833, 840 - 42 (1998). Here, then, until the issue of whether a violation of plaintiff's

constitutional rights actually occurred is determined, consideration of whether defendants are

entitled to qualified immunity for their actions is premature.

---

[5]In her Consultation Report of February 28, 2011, Dr. Maxwell noted that plaintiff "ha[d] difficulty walking." Compl., Ex. 4. The QMC System Consultation Request Form dated June 29, 2011 states that by then, plaintiff "use[d] wheelchair most of the time." Compl., Ex. 7.

## IV. Conclusion

For the foregoing reason, Dr. Mobashar's Motion to Dismiss and Dr. Calhoun's Motion for Judgment on the Pleadings will be denied, without prejudice to their ability to file properly-supported motions for summary judgment within thirty (30) days. An appropriate Order shall issue.

Entered this _____ day of _____ 2013.

Alexandria, Virginia

_____
/s/
Liam O'Grady
United States District Judge